Lemmon *v.* Bufalino et ux., Appellants.

Argued November 10, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Stuart A. Culbertson,* with him *Paul E. Allen,* for appellants.

*F. Joseph Thomas,* for appellees.

OPINION BY WRIGHT, J., December 16, 1964:

Edith Lemmon and her husband, Russell, filed a complaint in trespass against Sam Bufalino and Lena Bufalino, his wife, to recover damages for personal injuries sustained when Edith fell while descending an outside stairway at the front of defendants' apartment building at 238 Locust Street in the City of Meadville. Following a trial before Honorable LEO H. McKAY, specially presiding, the jury returned a verdict in favor of the wife-plaintiff in amount of $8,200.00, and a verdict in favor of the husband-plaintiff in amount of $1,-000.00. Motions by the defendants for a new trial and for judgment non obstante veredicto were overruled, and judgment was entered on the verdicts. This appeal followed.[1]

---

[1] As there were two verdicts, there should have been two judgments and two appeals. However, this procedural discrepancy is not material in view of our disposition of the case.

The record discloses that the apartment building in question contains three dwelling units. The Bufalinos, owners of the premises, occupied the first floor. For some years the Lemmons had occupied, as tenants, an apartment on the second floor. Access to a common vestibule is by outside cement steps at the front of the building. There are four steps from the sidewalk up to a landing, and then five more steps from the landing up to a porch. On the afternoon of March 14, 1963, while descending the steps, Edith fell at the landing and seriously injured her left knee. Her theory was that the Bufalinos were negligent in permitting the landing, which she was required to use[2] "to become icy, covered with snow, ridged and uneven, thereby creating a dangerous and hazardous condition which was concealed by snow which had not been cleaned from the landing".

We are clearly of the opinion, after reading the voluminous notes of testimony, that it was proper for the trial judge to submit the issues of negligence and contributory negligence to the jury. It is the duty of a landlord of a multiple-tenant building, reserving control of the common approaches, to keep such approaches reasonably safe for the use of tenants and their invitees: *Devine v. Hollander*, 192 Pa. Superior Ct. 642, 161 A. 2d 911. In addition to Edith and Russell, there were ten witnesses for the Lemmons on the question of liability. The jury could find from the testimony that the steps and landing were covered with ice and snow which had not been removed for several weeks and which had formed in icy ridges. See *Rinaldi v. Levine*, 406 Pa. 74, 176 A. 2d 623. Sam Bufalino testified for appellants that he had instructed his sons to keep the steps and landing clean. However, he did

---

[2] "Q. . . . Is there any other way out of your apartment to get to the outside and the street sidewalk. A. No there is not, that's the only—Q. The only entrance and exit. A. The only entrance".

not testify that this had been done, and frankly stated that, on the day of the accident, "they were in bad condition". He admitted that the spouting at the top of the porch was "in a rotting condition", and that water would seep through and drop down on the steps. He also testified that, on one occasion prior to the accident when Edith was attempting to alleviate the condition by applying salt, "I explained to her that those are a type of synthetic concrete steps and the minute you put salt on them they will just crack and disintegrate, and that was the reason I told her that and that we would use the hand rails . . . She said she wouldn't put salt on them in the future".

Appellants contend that Edith was guilty of contributory negligence, because she testified that she had used the steps twice before that day and knew of the dangerous condition. However, as pointed out in the opinion below, "her testimony showed that she tried to be careful so as to avoid a fall and that she had no other reasonably convenient means of entering or leaving her apartment". Cf. *Morris v. A. & P. Tea Co.*, 384 Pa. 464, 121 A. 2d 135; *Keiser v. P.T.C.*, 356 Pa. 366, 51 A. 2d 715. Contributory negligence may be declared as a matter of law only when it is so clearly revealed that fair and reasonable persons cannot disagree as to its existence: *Costello v. Wyss*, 200 Pa. Superior Ct. 568, 190 A. 2d 170. We have concluded that the instant case does not present such a situation. See *Beitch v. Mishkin*, 184 Pa. Superior Ct. 120, 132 A. 2d 703.

Appellants also contend that the trial judge erred in refusing to admit into evidence during the presentation of the Lemmons' case a written statement given by Edith to an insurance adjuster. Extensive cross-examination was permitted concerning this statement, during which Edith denied material portions thereof, and testified that she had not read it before signing.

Appellants argue that prejudice occurred because they should not have been required to call the insurance adjuster as their witness before the statement was admitted in evidence. In *Geelen v. Pennsylvania R. R. Co.*, 400 Pa. 240, 161 A. 2d 595, it was held that a statement which is in no way disputed is admissible without calling the scrivener. In the present case, however, Edith testified that the statement did not correctly recite the facts as she had related them, and it would therefore not have been admissible in the absence of the adjuster's testimony: *Seckinger v. Economy Laundry*, 133 Pa. Superior Ct. 414, 3 A. 2d 46. Here appropriate is the language of Mr. Justice MUSMANNO in *Fleischman v. Reading*, 388 Pa. 183, 130 A. 2d 429: "Candor and fair dealing dictate that when an insurance company undertakes to participate in a trial to the extent that it produces a paper, allegedly signed by the plaintiff, who repudiates the paper, the insurance company should not be allowed to conceal its interest behind a misty curtain of anonymity". A prior inconsistent statement by a plaintiff is admissible, not only for the purpose of impeaching credibility, but also as substantive proof: *Mitchell v. Shirey*, 407 Pa. 204, 180 A. 2d 65. As a matter of procedure, such a statement is to be received as a part of the case of the defendants, not of the plaintiffs: *Beardsley v. Weaver*, 402 Pa. 130, 166 A. 2d 529. In the instant situation we perceive no trial error.

Judgment affirmed.