## Smith, Appellant, v. M. P. W. Realty Company, Inc.

Argued October 7, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*A. Unkovic,* with him *Robert V. Maine, Edwin S. Fennell, Jr.,* and *Maine and Fennell,* and *Meyer, Unkovic & Scott,* for appellant.

*Joseph J. Lee,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 4, 1967:

In this personal injury action, the trial court entered a compulsory nonsuit which the court en banc refused to remove. The plaintiff appeals.

The defendant is the owner of a building leased to several commercial enterprises. Since 1955 the plaintiff has been the lessee of part of the building which he uses for the operation of a credit bureau. This leasehold originally consisted of four rooms, but on November 1, 1959, an adjoining room was added thereto and plaintiff entered into occupancy thereof during the second or third week of December. The entire building is heated by a central steam-heating system controlled and operated by the defendant. The steam is generated in a boiler in the basement and conveyed by pipes to radiators located throughout the building.

On December 30, 1959, one of plaintiff's employees informed him that the room recently added to the leasehold was cold. He entered the room and found that a radiator located therein and the air vent inserted in the side thereof were cold to the touch. He noticed that the particular air vent was in a horizontal position with the floor, rather than in its proper vertical position.[1] He attempted unsuccessfully to move the vent a quarter turn with his left hand. He then applied "extra pressure" with both hands and suddenly the vent fell from its socket and steam and hot water spewed from the hole in the radiator seriously burning the plaintiff's hands.

The court below ruled: (1) that the plaintiff failed to establish a prima facie case of negligence on the part of the defendant-landlord; and, (2) that plaintiff

---

[1] There was expert testimony that the purpose of the vent was to allow the cold air to escape from the radiator so the steam could enter, and that this particular type of vent would not function unless it was positioned "straight up and down."

was guilty of contributory negligence, as a matter of law, in attempting to correct the position of the vent personally, particularly without first closing the steam control valve located on the opposite side of the radiator, as well as in applying extra force to turn the vent.

The negligence asserted was based upon the claim, that the air vent involved was in such a state of latent disrepair that it constituted a dangerous condition which the landlord in the exercise of reasonable care should have discovered and remedied before injury resulted.

As a general rule, a landlord does not warrant that the leased premises are in a tenantable condition. However, where the landlord retains control of a part of the leased premises, which is necessary to the safe use of the leased portion, he is liable to the lessee and others lawfully on the premises for physical harm caused by a dangerous condition existing upon that part over which he retains control, if by the exercise of reasonable care he could have discovered the condition and the risk involved, and made the condition safe. See, Restatement 2d, Torts, §361 (1965). See also, *Wolk v. Pittsburgh Hotels Co.,* 284 Pa. 545, 131 A. 537 (1925), and *Pratt v. Scott Enterprises, Inc.,* 421 Pa. 46, 218 A. 2d 795 (1966). The above rule has been applied to plumbing and heating facilities over which the landlord retains control. See 32 Am. Jur. 621, Landlord & Tenant, §§744, 745, and 22 P.L.E., Landlord & Tenant, §251. See also, Restatement 2d, Torts, §361, comment c (1965), and *Gladden v. Walker & Dunlop, Inc.,* 168 F. 2d 321 (1948).

In order to warrant a finding that the instant landlord-defendant failed to exercise reasonable care in discovering and correcting the alleged dangerous condition, it was necessary for the plaintiff to establish that the defendant had either actual or constructive notice

of the condition. See, *Loeb v. Allegheny County*, 394 Pa. 433, 147 A. 2d 336 (1959).

In order to meet this burden, the plaintiff attempted to show that the vent was in a dangerous and defective condition for some time, and through reasonable inspection the condition could have been discovered. To support this contention, he introduced the testimony of one of his employees who worked in the room where the accident occurred. She stated that on several previous occasions she complained to the defendant's agents about the lack of heat. When these complaints were made is unclear.[2] Moreover, she did not say that the complaints were made about the lack of heat in the room involved, rather she said, "I would call downstairs and say it was cold in other parts of the building in our particular suite of offices."

The plaintiff also introduced the testimony of a heating expert who examined the vent involved some months after the accident. He stated that the vent was an old type; the threads were stripped, flattened out, unusable and would not hold in any "female connection." However, this witness specifically stated that the thread condition could have been caused by the force plaintiff himself used in turning the vent, and he was not testifying that this defective condition existed before the day the accident occurred.

There was no evidence to prove actual notice of the alleged dangerous condition, and the testimony summarized before was insufficient to establish the existence of constructive notice. Hence, the court below was correct in ruling that the plaintiff failed to establish negligence on the part of the defendant.

Judgment affirmed.

Mr. Justice MUSMANNO and Mr. Justice ROBERTS dissent.

---

[2] It is nowhere clearly stated that any complaints were rendered after the additional room became occupied.