## Ciccotta v. Perry Manufacturing Inc.

*David L. Deratzian,* for plaintiff.
*Stanley P. Stahl,* for defendants.

GOLDMAN, *J.,* August 30, 1995—

## I.

On August 26, 1989, plaintiff Anthony Ciccotta, a carpenter, was working on a drywall project at Commerce Square in Philadelphia. Plaintiff was standing on a scaffold manufactured by defendant Perry Manufacturing Inc. when he fell to the floor with the board of the scaffold. He allegedly sustained a herniated lumbar disc and rotator cuff injury as a result of the accident.

On March 22, 1991, plaintiff instituted this products liability action alleging that the scaffold was defectively designed. He sought compensation for his injuries as well as wage loss damages. A jury trial was held from January 13, 1995 to January 20, 1995. The jury returned a verdict in favor of defendant finding that the scaffold was not defectively designed.

Plaintiff timely filed post-trial motions requesting a new trial. He contends (1) the court erred by excluding evidence of an authoritative work; (2) the court erred in refusing a requested jury instruction on malfunction and (3) the court erred in failing to declare a mistrial.

## II.

Preliminarily, it should be noted that it is in the trial court's sound discretion whether to grant a new trial. *Dorn v. Stanhope Steel Inc.,* 368 Pa. Super. 557, 581, 534 A.2d 798, 810 (1987), *allocatur denied,* 518 Pa.

656, 544 A.2d 1342 (1988). Pennsylvania courts only grant new trials when "the evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice." *Houseknecht v. Walters,* 404 Pa. Super. 85, 90, 590 A.2d 20, 23 (1991). Further, a new trial is proper when the court committed an error of law which affected the outcome of the case. *Pollock Industries Inc. v. General Steel Castings Corp.,* 203 Pa. Super. 453, 201 A.2d 606 (1964). In light of the above standards, plaintiff is not entitled to a new trial.

## A.

Plaintiff first argues that the court erred by excluding evidence of an authoritative work. During the direct examination of plaintiff's liability expert, Owen Nugent Jr., plaintiff's counsel asked Mr. Nugent about his review of studies conducted by the Department of Labor or OSHA. (N.T. 207.) Defendant objected arguing that Mr. Nugent could not testify about these government studies. (N.T. 207-208.) The court sustained the objection, and plaintiff now argues that this was prejudicial error warranting a new trial. This argument fails.

The law in Pennsylvania is clear that statements contained in treatises cannot be introduced during trial as substantive evidence. *Nigro v. Remington Arms Co. Inc.,* 432 Pa. Super. 60, 80, 637 A.2d 983, 993 (1993). Pennsylvania does not recognize a learned treatise exception to the hearsay rule, and thus statements in treatises are not permitted in evidence to prove the truth of the matters asserted therein. *Majdic v. Cincinnati Machine Co.,* 370 Pa. Super. 611, 621, 537 A.2d 334, 339 (1988), *allocatur denied,* 520 Pa. 594, 552 A.2d

249 (1988). Based on the rule articulated in *Majdic,* the court has held that an expert cannot read portions or otherwise offer statements contained in a learned treatise to the jury during direct examination. *Jones v. Constantino,* 429 Pa. Super. 73, 88-89, 631 A.2d 1289, 1297-98 (1993), *allocatur denied,* 538 Pa. 671, 649 A.2d 673 (1994).[1] Thus, whether the evidence is admissible depends upon the purpose for which the testimony is being used.

In the instant case, plaintiff attempted to elicit information from Mr. Nugent about statements contained in studies conducted on behalf of OSHA and the Department of Labor. If offered substantively, the proffered evidence constituted inadmissible hearsay. See *Kearns by Kearns v. DeHaas,* 377 Pa. Super. 200, 213, 546 A.2d 1226, 1233 (1988) (stating that published authorities cannot be introduced in evidence to prove truth of matters asserted therein), *allocatur denied,* 522 Pa. 584, 559 A.2d 527 (1989). As defendant argues, it appears that plaintiff was attempting to offer the studies as substantive evidence.

When plaintiff questioned Mr. Nugent about the OSHA and Department of Labor studies, Mr. Nugent had not yet rendered an opinion on the design or safety of the subject scaffold. It was thus unlikely that the evidence was intended to corroborate Mr. Nugent's opinion. Therefore, the evidence was offered to prove the truth of the matter and was inadmissible hearsay.

---

1. This court is of the opinion that Pennsylvania should follow Federal Rule of Evidence 803(18) and adopt a learned treatise exception to the hearsay rule. See also, *Nigro, supra* at 87, 637 A.2d at 996 (Beck, J., concurring) (proposing Pennsylvania join other jurisdictions and recognize hearsay exception for learned treatises).

Plaintiff argues that he was attempting to use the studies as corroborative evidence to bolster Mr. Nugent's credibility and not as substantive evidence. We recognize that Pennsylvania cases have allowed witnesses to refer to studies and statements in treatises as corroboration for their testimony. See *e.g., Nigro, supra* at 80, 637 A.2d at 993 (permitting expert to bolster credibility by reading from authoritative treatise). However, plaintiff's contention that he intended to corroborate Mr. Nugent's testimony fails. First, as noted above, there was no opinion subject to corroboration when the evidence was offered. Further, plaintiff did not make an "offer of proof" to that effect and only argued that the evidence was for corroborative purposes in post-trial briefs.

After defendant objected to the question about the studies, a sidebar conference was held. (N.T. 207.) Plaintiff argued his position and made an "offer of proof" concerning the proposed evidence. Plaintiff's counsel explained that the offered document described various studies of scaffolds and that the document was in circulation. (N.T. 208.) He did not state that the evidence was proffered for a non-hearsay purpose—namely to bolster his witness. Thus, he cannot now argue in post-trial briefs that the evidence was not being introduced substantively but as corroboration. See *Commonwealth v. Newman,* 382 Pa. Super. 220, 230-31, 555 A.2d 151, 156 (1989) (offer of proof must fully state purpose for which evidence is being offered and party cannot later argue that evidence is admissible for purpose not articulated in offer of proof), *allocatur denied,* 540 Pa. 580, 655 A.2d 512 (1995). Thus, since the evidence was offered substantively, it was properly excluded.

Plaintiff also argues that the court erred in not allowing him to cross-examine the defense expert, Gene Litwin, with the Department of Labor and OSHA studies previously precluded during Mr. Nugent's direct examination. Plaintiff asked Mr. Litwin about a study conducted by an entity connected with OSHA. (N.T. 450-51.) Mr. Litwin refused to recognize the study as authoritative, and the court precluded any cross-examination on the study. (N.T. 476.) Plaintiff claims that this was error. His argument fails.

The Pennsylvania courts have held that an expert witness may only be "cross-examined on the contents of a publication upon which he or she has relied in forming an opinion, and also with respect to any other publication which the expert acknowledges to be a standard work in the field." *Majdic, supra* at 621, 537 A.2d at 339. Since Mr. Litwin did not establish that the study was standard or authoritative, he could not be cross-examined upon it. See Leonard Packel & Anne Bowen Poulin, Pennsylvania Evidence §803.18 at 608 (1987) (requiring cross-examination to be based upon treatises which expert admits are authoritative). Thus, the court did not err in disallowing the cross-examination, and the motion for a new trial on these grounds was denied.

## B.

Plaintiff claims next that he is entitled to a new trial because the court erred in failing to charge the jury on the malfunction theory. Plaintiff requested that the jury be instructed that:

"A plaintiff in a strict liability case may prove his case merely by showing the occurrence of a malfunction of a product during normal use. The plaintiff need *not* prove the existence of a specific defect in the product.

The plaintiff must prove three facts. He must prove that the product malfunctioned, that it was given only normal or anticipated usage prior to the accident, and that no reasonable secondary causes were responsible for the accident." Pennsylvania Suggested Standard Jury Instruction 8.05 (Civ). (emphasis in original) The court did not err in refusing the requested charge.

First, it should be noted that in formulating its charge, the court is not required to use the precise points submitted by counsel. *Cooper v. Burns,* 376 Pa. Super. 276, 283, 545 A.2d 935, 938 (1988), *allocatur denied,* 522 Pa. 619, 563 A.2d 888 (1989). Rather, the court's charge must accurately define the issues and correctly review the applicable law. *Id.* The charge in this case was proper.

The Pennsylvania Supreme Court has held that the malfunction theory is an appropriate method to prove a defect. *Rogers v. Johnson & Johnson Products Inc.,* 523 Pa. 176, 182, 565 A.2d 751, 754 (1989). The theory requires the plaintiff to show that the subject product malfunctioned and that there was no abnormal use or reasonable secondary causes for the malfunction. *Id.* Thus, the theory allows circumstantial evidence of a product defect. *Id.*

However, in *Rogers,* the court stated that the product malfunction theory is available in manufacturing defect cases where the plaintiff is unable to prove the specific nature of the defect and thus must infer a defect from the circumstances of the accident. *Id.* See also, *Woodin v. J.C. Penney Co. Inc.,* 427 Pa. Super. 488, 492, 629 A.2d 974, 975-76 (1993) (discussing availability of malfunction theory in manufacturing defect case), *allocatur denied,* 537 Pa. 612, 641 A.2d 312 (1994). In the instant case, plaintiff was not alleging a manufacturing defect nor was he unable to prove the precise defect. Rather,

plaintiff alleged that the scaffold was defectively designed. Moreover, Mr. Nugent testified that the platform of the scaffold was not secured to the frame, and this design constituted a defect. (N.T. 227.) Thus, plaintiff explained precisely why the product was defectively designed and did not allege an abstract manufacturing defect. Accordingly, the malfunction theory was not available to plaintiff. See *Ducko v. Chrysler Motors Corp.,* 433 Pa. Super. 47, 50, 639 A.2d 1204, 1205 (1994) (stating that plaintiff can use malfunction theory of proving defect in certain *manufacturing* defect cases).

Further, even if the theory was available, plaintiff did not satisfy all the requisite elements of the malfunction theory. As defendant argues, plaintiff did not present a case free from evidence of abnormal use or reasonable secondary causes. See *Rogers, supra* at 182, 565 A.2d at 754 (outlining necessary requirements of proving defect through malfunction theory). James Troilo, who worked with plaintiff on the day of the accident, testified that he moved the subject scaffold and then did not lock the wheels of the scaffold before plaintiff used it. (N.T. 74-75.) Further, during trial, plaintiff admitted that he earlier stated in interrogatories that the platform plank of the subject scaffold may have been the wrong size. (Ciccotta cross, pp. 76-78.) Thus, there were other possible causes of the accident, and plaintiff did not satisfy the requirements of the malfunction theory. Therefore, the court did not err in refusing the requested instruction, and plaintiff's motion for a new trial on this issue was denied.

## C.

Plaintiff finally argues that a new trial is warranted because the court denied his motion for a mistrial. On redirect examination, plaintiff questioned his expert,

Mr. Nugent, about Mr. Nugent's involvement in another case concerning a scaffold manufactured by defendant. Plaintiff's counsel asked Mr. Nugent about the accident implicated in that case, when defense counsel stated "I have no objection to this question as long as the jury gets the verdict, too." (N.T. 282-83.) The verdict in that case was never stated to the jury. Plaintiff moved for a mistrial, and the court denied the motion. Plaintiff contends that the statement introduced a "highly prejudicial element into the case," (Plaintiff's brief) and that denying the motion was prejudicial error. This contention fails.

It should first be noted that the court instructed the jury on the first day of trial that the evidence in the case consisted of the witness' testimony and any admitted documents or photographs. (N.T. 8-9.) The court specifically told the jury that the lawyers' comments are not evidence. (N.T. 9.) Thus, the jury was aware that defense counsel's statement was not evidence to be considered in reaching the verdict.

Further, as a general rule, the decision to grant or deny a mistrial because of remarks made by counsel is within the discretion of the trial court. *Speer v. Barry,* 349 Pa. Super. 365, 372, 503 A.2d 409, 413 (1985), *allocatur denied,* 514 Pa. 625, 522 A.2d 51 (1987). In deciding whether a mistrial should have been granted, the circumstances under which the alleged improper conduct occurred and the precautions taken to prevent the conduct from having a prejudicial effect on the jury are important determining factors. *Clark v. Hoerner,* 362 Pa. Super. 588, 596, 525 A.2d 377, 381 (1987). Further, the appropriate analysis for judging a remark by counsel or a witness is whether the statement was "so inflammatory or prejudicial as to prevent a fair trial." *Id.*

In the instant case, even if the jury was able to deduce the result in the other case from defense counsel's statement, the statement was not so inflammatory as to preclude plaintiff from receiving a fair trial. There was no indication that the remark prejudiced plaintiff or influenced the verdict. See *Harvey v. Hassinger,* 315 Pa. Super. 97, 106, 461 A.2d 814, 818 (1983) (finding that plaintiff's counsel's remarks during closing argument referring to defendant as having "murdered" pedestrian was improper but not so prejudicial as to require new trial). But see *Boscia v. Massaro,* 365 Pa. Super. 271, 276, 529 A.2d 504, 506 (1987) (finding that employee who sued elevator company for personal injures was entitled to new trial due to improper statements by defense counsel concerning employee's receipt of workers' compensation benefits), *allocatur denied sub nom. Boscia v. Schindler-Haughton Elevator Co.,* 517 Pa. 620, 538 A.2d 874 (1988).

Moreover after denying the motion for a mistrial, the court offered to cure any possible prejudice by an instruction to the jury. (N.T. 314.) An instruction from the court was the proper method to adequately dissipate any prejudicial effect defense counsel's remarks may have had on the jury. *State Farm Mutual Automobile Insurance Co. v. Moore,* 375 Pa. Super. 470, 478, 544 A.2d 1017, 1021 (1988), *allocatur denied sub nom. State Farm Mutual Automobile Insurance Co. v. Ohio Casualty Insurance Co.,* 521 Pa. 622, 557 A.2d 725 (1989). However, plaintiff failed to accept this curative offer. Since the remark was not prejudicial in the first place, and the court took appropriate steps to remedy any unlikely harm, the motion for a mistrial was properly denied. Therefore, the motion for a new trial on this issue was denied.